HARTWIG N. BARUCH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15868. Promulgated July 29, 1948.

*Irvin C. Rutter, Esq.*, for the petitioner.
*Stephen P. Cadden, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The Commissioner has determined deficiencies in petitioner's income tax of $4,430.58 for 1943 and $12,249.84 for 1944.

The petitioner alleges that the Commissioner erred in his determination of these deficiencies by:

(a) The disallowance of a net operating loss deduction in the amount of $43,565.76 for the calendar year 1943, attributable to a net operating loss carryover resulting from a net operating loss for the calendar year 1942; or in the alternative by failing to allow said deduction to the extent of the gross income as alleged in paragraph 5 (c) hereof.

(b) The disallowance of a net operating loss deduction in the amount of $28,355.57 for the calendar year 1944 attributable to a net operating loss carryover resulting from a net operating loss for the calendar year 1942.

The facts are stipulated and may be summarized as follows:

The petitioner is an individual, with principal office in New York City.

The returns for the periods here involved were filed with the collector of internal revenue for the second district of New York.

In 1917 the petitioner purchased a livestock and produce farm at White Marsh, Virginia. On May 8, 1942, the petitioner sold the farm, consisting of land, buildings, machinery, and equipment, for $105,000 and incurred a net loss on the sale in the amount of $61,163.33. From the time of the purchase up to the time of the sale on May 8, 1942, the petitioner operated this farm as a business regularly carried on by him.

During the calendar year 1942 the petitioner received gross taxable income amounting to $18,231.66. No part of this amount was derived from or in any way connected with his farm. For the calendar year 1942 petitioner had deductions (not including any net operating loss carry-over from any year) amounting to $75,279.29. This amount included the sum of $61,163.33 representing the net loss on the sale of his farm. For this year the excess of the deductions over petitioner's gross taxable income amounted to $57,047.63. The petitioner also received nontaxable income in 1942 in the amount of $3,407.17.

During the calendar year 1943 the petitioner received gross taxable income amounting to $19,764.01, no part of which was derived from his farm, and he had deductions (not including any net operating loss carry-over from any year) amounting to $4,522.54, the difference representing net taxable income amounting to $15,241.47. The petitioner also received nontaxable income in 1943 in the amount of $3,406.79.

Upon the assumption that the net loss referred to above is includible in determining any net operating loss carry-over, after making the adjustments required by the provisions of section 122 (d) (1), (2), (3), (4), and (6) of the Internal Revenue Code, and after deducting the amount of the petitioner's net income for the calendar year 1941 (computed as required by section 122 (b) (2) of the Internal Revenue Code), the excess of deductions over gross income for the calendar year 1942 resulted in a net operating loss carry-over to the calendar year 1943 and a net operating loss deduction for the calendar year

1943 amounting to $43,565.76. The Commissioner does not concede, however, that the net loss from the sale of the farm in 1942 is includible in determining any net operating loss carry-over and his determination of a tax deficiency for the calendar year 1943 resulted solely from his exclusion of the entire amount of this net loss of $61,163.33 as a deduction in determining any net operating loss carry-over from the calendar year 1942 to the calendar year 1943.

Upon the assumption that the net loss referred to above is includible in determining any net operating loss carry-over, after making the adjustments required by the provisions of section 122 (d) (1), (2), (3), (4), and (6) of the Internal Revenue Code, and after deducting the amount of the petitioner's net income for the calendar years 1941 and 1943 (computed as required by section 122 (b) (2) of the Internal Revenue Code), the excess of deductions over gross income for the calendar year 1942 resulted in a net operating loss carry-over to the calendar year 1944 and a net operating loss deduction for the calendar year 1944 amounting to $28,355.57. The Commissioner does not concede, however, that the net loss from the sale of the farm in 1942 is includible in determining any net operating loss carry-over, and his determination of a tax deficiency for the calendar year 1944 resulted solely from his exclusion of the entire amount of said net loss of $61,163.33 as a deduction in determining any net operating loss carry-over from the calendar year 1942 to the calendar year 1944.

We first take up petitioner's main contention, which is that his net loss of $61,163.33 from the sale of his farm in 1942 was a net operating loss deduction within the meaning of section 122 of the code and that it is not limited by the provisions of subsection (d) (5) of that section, which reads:

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\* \* \* \* \* \* \*

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection.

The same issue in principle as petitioner's main contention in the instant case was recently before this Court in *Joseph Sic*, 10 T. C. 1096, and the issue was there decided in favor of the Commissioner.

The petitioner in his reply brief concedes that our decision in the *Sic* case is against him, as are also two United States District Court decisions, namely: *Lazier* v. *United States*, 77 Fed. Supp. 241, and *Foreman* v. *Harrison* (Dist. Ct., N. Dist. Ill.), —— Fed. Supp. ——

(June 1, 1948). Petitioner, however, argues that these cases were wrongly decided and asks that we reexamine the question in the light of the arguments and analysis made by petitioner in his brief.

We have carefully examined the arguments and the cases cited in petitioner's brief, but we do not see where these are essentially different from the arguments which the taxpayer made in the *Sic* case, *supra*. In view of the fact that the *Sic* case was reviewed by the Court and the arguments of the taxpayer in that case were fully considered, we deem it unnecessary to take up and discuss in detail the arguments made by petitioner in the instant case. Following the *Sic* case, we hold that petitioner's net loss from the sale of his farm in 1942 was not a deduction attributable to the operation of a trade or business regularly carried on by petitioner and, therefore, the limitations fixed by section 122 (d) (5) of the code must be applied.

Petitioner has an alternative contention raised by an amendment to his assignment of error (a) which reads, "or in the alternative, by failing to allow said deduction to the extent of the gross income as alleged in paragraph 5 (c) hereof." Paragraph 5 (c) of the petition, as amended, reads:

(c) During said calendar year 1942 petitioner received gross income amounting to $18,231.66, no part of which was derived from the operation of the petitioner's livestock and produce farm.

Although petitioner was granted leave at the hearing to amend his petition and raise this alternative assignment of error and did in fact file such amendment to his petition at that time, he nowhere mentions this alternative assignment of error in his brief. However, since this alternative is properly raised by the pleadings and has not been expressly abandoned, we shall decide it even though we would be justified in assuming that petitioner had abandoned it. From this alternative assignment of error we conclude that it is petitioner's contention that, even if we rule against him on the main issue, he is entitled to have carried forward to 1943 a net operating loss deduction of $18,231.66. Petitioner seems to base this contention under that part of section 122 (d) (5) which reads:

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed *only to the extent of the amount of the gross income not derived from such trade or business.* * * * [Emphasis supplied.]

As we understand the provision in (d) (5) to which emphasis has been given above, it does not mean what petitioner seems to think it means. It simply means that such loss as petitioner had in 1942 on the sale of his farm ($61,163.33) can be used only in computing petitioner's net operating loss deduction under section 122 to the extent of petitioner's income "not derived from such trade or business."

This has been stipulated to be $18,231.66. That does not mean, however, that petitioner will have a net loss carry-over to 1943 of $18,231.66. Mertens Law of Federal Income Taxation, vol. 5, sec. 29.05, discusses "Adjustment for Deductions Not Attributable to Trade or Business" and says in part:

In computing the amount of operating loss deduction allowable "deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall *(in the case of a taxpayer other than a corporation)* be allowed only to the extent of the amount of the gross income not derived from such trade or business." In applying this principle the deductions and gross income are to be computed by giving due effect to the other exceptions and limitations provided for in the net operating loss provision of the statute. *This provision means that to the extent that the net operating loss is not attributable to the operation of a trade or business regularly carried on by the taxpayer it may not be carried over as a deduction in succeeding years.* \* \* \* [Emphasis supplied.]

Treasury Regulations 111 contain detailed provisions to be used in the application of section 122, "Net Operating Loss Deduction," as added by section 211 (b), Revenue Act of 1939 and amended by sections 105 (e), 150 (e), 153 (a), (b), and (c) of the Revenue Act of 1942. See section 29.122–3, "Computation of Net Operating Loss in Case of a Taxpayer Other Than a Corporation," and section 29.122–4, "Computation of Net Operating Loss Carry-Overs and Net Operating Loss Carry-Backs." These regulations are lengthy and deal with a complicated subject. We shall make no attempt here to analyze the effect of these various provisions of the regulations. Petitioner does not attack the validity of any of these regulations, except in so far as they would hold that petitioner's loss of $61,163.33 incurred in the sale of his farm in 1942 was one which he could not carry forward to 1943 and 1944. To the extent that these regulations are applicable to the facts which have been stipulated in this case, they should be applied in a recomputation under Rule 50, bearing in mind our holding that the limitations of section 122 (d) (5) must be applied and given effect in the treatment of petitioner's farm sale loss in 1942 of $61,163.33.

The facts which have been stipulated, together with petitioner's income tax returns for 1941, 1942, 1943, and 1944, which are in evidence, would seem to make available all necessary facts and data for a computation under Rule 50, using the Treasury regulations referred to above wherever they are applicable, and such computation will determine whether petitioner is entitled to any relief for the year 1943 under his alternative assignment of error. It seems clear that petitioner is not entitled to the $18,231.66 net loss carry-over to 1943 which he claims in his alternative assignment of error.

*Decision will be entered under Rule 50.*